IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ANDREWS, | ) | CASE NO. 1:11CV2310 |
| | ) | |
| Petitioner, | ) | JUDGE ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BARRY GOODRICH, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Michael Andrews ("Andrews") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on October 27, 2011.  Andrews is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Andrews*, Case No. CR-08-514320-A (Cuyahoga County 2009).  For the reasons set forth below, Andrews' petition should be dismissed with prejudice.

I.

The state appellate court reviewing Andrews' conviction during his direct appeal found the following facts to be relevant to his case:

> {¶ 4} On August 19, 2008, a Cuyahoga County Grand Jury indicted Andrews on one count each of drug possession, drug trafficking, and possession of criminal tools in connection with a controlled delivery of cocaine shipped from California to Cleveland.  Andrews pleaded not guilty at the arraignment, several pretrials followed, and on October 27, 2008, a jury trial commenced. . . .

{¶ 5} Michael Cernelich testified that he is a United States Postal Inspector who assists federal, state, and local law enforcement in agencies drug enforcement. Cernelich testified that on July 28, 2008, he was contacted by Cleveland Police Narcotics Unit to assist in a controlled drug delivery of a Federal Express package that was shipped from California to an address on Cleveland's west side.

{¶ 6} Cernelich testified that he obtained a Federal Express truck and uniform and traveled to the address accompanied by a Cleveland police detective.  Cernelich testified that when he arrived at the location with the package that was addressed to one Maria Lopez, he initially received no response when he knocked on the door.  However, an individual named Brittany Logan appeared at the rear upstairs window, subsequently came downstairs, and eventually signed for the package.

{¶ 7} Logan indicated that Lopez was a friend who was unavailable, therefore, Logan would sign for the package. Cernelich gave Logan the package and watched her walk back up the stairs with the package.

{¶ 8} Around April or May of 2008, Logan met Andrews, who is also known as "Big Mac," through her boyfriend Keion Morgan, who is also known as "Ghost."  Logan, at the same time, also met an individual introduced to her as "O.C." that was visiting from California.  Logan's boyfriend was subsequently arrested for a parole violation and extradited to his home state of California.

{¶ 9} When Morgan was extradited to California, Andrews would periodically check to see how Logan was doing.  A few weeks prior to the delivery of the package, Andrews learned that Logan was experiencing financial hardship.  Andrews offered to have a package delivered to her residence and in exchange he would give her some drugs.

{¶ 10} Two days prior to the delivery, Andrews contacted Logan, gave her the confirmation number, and instructed her not to answer the door when the packaged [sic] arrived.  The night before the anticipated delivery, Andrews stayed at her house, but the package never arrived, and Andrews instructed her to go to a pay phone to check the status.  Upon checking the status, Logan learned that the delivery was scheduled for the following Monday.

{¶ 11} Early Monday morning, Andrews contacted Logan by means of a "chirp" from the walkie talkie feature of his Nextel phone to alert her to wait for the package. Logan waited for the package and signed for it when it was delivered.

{¶ 12} Logan testified that immediately after the package was delivered, the police arrived.  Logan told the police that the package belonged to Andrews, and they instructed her to contact Andrews.  Logan stated that when she told Andrews the package had been delivered, he instructed her to walk around the block to see if there was anything unusual.  The police instructed Logan to tell Andrews that she

did not notice anything unusual, and she complied.

{¶ 13} Andrews initially asked her to pick him up at his nephew's home, but instructed her to leave the package at her house. Logan traveled to Cleveland's east side with a detective in her car and other police officers following behind. Logan stated that Andrews chirped her while she was en route and instructed her to pick him up at a corner store located at the Eddy and Arlington Roads. Logan stated that the detective exited her car before she reached the appointed location.

{¶ 14} When Logan arrived at the corner store, Andrews entered her car and asked if she was sure no one was following her. Logan testified that as they attempted to drive away, the police stopped the car, at which point, Andrews stated "I knew it."

{¶ 15} Detective Franklin Lake of the Cleveland Police Department testified that he provided surveillance of Logan's address before the package was delivered. After the delivery of the package, Detective Lake and fellow members of the force entered Logan's residence to execute a search warrant, at which time Logan indicated that the package was for Andrews.

{¶ 16} Detective Lake stated that Logan was instructed to contact Andrews, and when she did, he listened to the entire conversation on the speaker phone. Detective Lake monitored Logan as she traveled to pick up Andrews on Cleveland's east side. Detective Lake observed Andrews enter Logan's car when she arrived at the designated location.

{¶ 17} Detective Gloria Santiago of the Cleveland Police Department testified that she was part of the surveillance team and assisted in the execution of the search warrant after the package was delivered. Detective Santiago was present when Logan indicated the package belonged to Andrews and she was privy to all the conversations between Andrews and Logan regarding picking him up from his nephew's house.

{¶ 18} Detective Santiago rode in Logan's vehicle to meet Andrews, and as they neared the location, Andrews contacted Logan and instructed her to pick him up at a corner store located at the intersection of Eddy and Arlington Roads. Detective Santiago exited Logan's vehicle when they were approaching the corner store. Detective Santiago observed Andrews enter Logan's vehicle.

{¶ 19} Detective Jamaal Ansari of the Cleveland Police Department's Narcotics Division testified that he leads a parcel interdiction team. Detective Ansari stated that the subject package came to their attention because of canine alert, which resulted in it being confiscated and a search warrant obtained to open the package.

{¶ 20} Once opened, the team found two Arizona Tea cans containing suspected powdered cocaine. Detective Ansari subsequently obtained a search warrant for the

3

address, arranged for a controlled delivery, and began surveillance of the address.

{¶ 21} Detective Ansari testified that on July 28, 2008, his team executed the controlled delivery of the package and once completed, his team entered Logan's residence to execute the search warrant.  Detective Ansari stated that Logan agreed to cooperate and indicated that the package belonged to Andrews.  Logan contacted Andrews while Detective Ansari and the fellow officers listened on the speaker phone to the conversation that ensued.

{¶ 22} Detective Ansari and his team provided surveillance and monitoring as Logan traveled to meet Andrews.  Once Andrews entered Logan's vehicle, Detective Ansari gave the order to initiate a felony stop of the vehicle.  After Andrews and Logan were removed from the vehicle, he reached in and picked up Logan's cellular phone and found another cellular phone on the passenger seat.  Detective Ansari used Logan's phone to call the phone number of the last call received, and the cellular phone he found on the passenger's seat rang.

{¶ 23} The jury found Andrews guilty of drug possession and possession of criminal tools, but not guilty of drug trafficking.  On January 12, 2009, the trial court sentenced Andrews to a prison term of five years for drug possession and six months for possession of criminal tools.  The trial court ordered the sentences served concurrently.

*State v. Andrews*, Slip Copy, 2010 WL 2966808, at *1-*3 (Ohio App. July 29, 2010).

Although Andrews was represented by counsel at trial, he moved *pro se* on September 15, 2008 for a speedy trial.  The court held a pre-trial meeting on September 19, 2008.  At Andrews' request, the case was continued for a final pre-trial on September 29, 2008 to allow the state to issue a response to a request for written discovery.  At a second pre-trial meeting, the trial date was changed from October 14, 2008 to October 23, 2008 at defendant's request.  On October 23, 2008, the court *sue sponte* continued trial until October 27, 2008, due to a concurrent mitigation phase proceeding.

On December 2, 2008, after the verdict but before sentencing, Andrews moved *pro se* by oral motion to dismiss his attorney.  The court granted this motion and appointed the public defender to represent Andrews.

4

On December 11, 2006, Andrews moved *pro se* in the trial court to declare a mistrial due to the extreme ineffectiveness of trial counsel.  Andrews renewed this motion on December 17, 2008.  On December 23, 2008, Andrews moved *pro se* in the trial court to declare a mistrial due to due process violations, violations of Ohio Rev. Code § 2925.51 and Ohio Crim. R. 29, and interference with his civil rights in violation of Ohio Rev. Code § 2921.45.  On December 29, 2008, Andrews moved *pro se* in the trial court for discovery, a poll of the grand jury, and a stay of proceedings.  On January 6, 2009, Andrews renewed his motion of December 29, 2008.  The trial court denied all three motions on January 13, 2009.

On May 10, 2009, Andrews timely appealed his conviction and sentence.  Andrews, through counsel, raised two assignments of error in his appellate brief:

FIRST ASSIGNMENT OF ERROR:

Appellant was denied the effective assistance of counsel guaranteed under Article I, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution.

SECOND ASSIGNMENT OF ERROR:

The Appellant's convictions are against the manifest weight of the evidence.

\*          \*          \*

The claim of ineffective assistance of trial counsel in the first assignment of error alleged that trial counsel was ineffective for failing timely to move to dismiss based on a violation of Andrews' right to a speedy trial and failing to subpoena a witness from Sprint/Nextel to interpret cell phone records.  On August 19, 2009, Andrews filed *pro se* in the state appellate court a supplemental appellate brief and a motion to terminate appointed counsel. In his supplemental brief, Andrews asserted two additional assignments of error:

5

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 1:

Defendant-Appellant was denied due process under Ohio law and [the] United States Constitution where the trial court failed to comply with [the] mandatory speedy trial requirement.

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 2:

Defendant-Appellant was denied effective assistance of trial counsel in violation of [the] Ohio and United States Constitution[s] when counsel failed properly to file [a] motion to dismiss charges based upon expiration of speedy trial time in violation of Article 1, Section 16 of Ohio law and 6th Amendment of [the] U.S. Constitution.

(Capitalization and spelling altered from the original.)  The state appellate court considered the merits of all assignments of error upon review but denied Andrews' motion to terminate appellate counsel.   On July 19, 2010, the state appellate court overruled all four assignments of error and affirmed the judgment of the trial court.

On August 9, 2010, Andrews petitioned for *en banc* reconsideration by the state appellate court.  In his petition, Andrews asserted, "Counsel also failed to present an available defense, request jury instructions on the potential benefit of Ms. Logan's testimony, and the withholding of the agreement from the Defendant and jury shows prejudice [sic] against him."  Exh. 23, p. 7.  The state appellate court denied this petition on October 6, 2010.  In denying Andrews' petition, the state appellate court stated that *en banc* proceedings are for the purpose of resolving legitimate conflicts on a point of law within the appellate district.  The court added that the failure to properly identify such a conflict may result in the summary dismissal of an *en banc* request.  The state appellate court then denied Andrews' petition for *en banc* consideration because Andrews did not identify a legitimate conflict on a question of law.

On September 13, 2010, Andrews filed in the Ohio Supreme Court a notice of

6

appeal of the state appellate court's decision.  In his memorandum in support of jurisdiction, Andrews asserted five propositions of law:

> Proposition of Law No. 1:
>
> The Eighth District Court of Appeals' decision that a motion for discovery tolls speedy relief is contrary to an objective reasonable decision of the Ohio and United States Supreme Court under R.C. 2945.71-72 and the Sixth Amendment.
>
> Proposition of Law No. 2:
>
> The trial court's performance fell below a reasonable standard of effective assistance of counsel under the Strickland and Bradley standards, when counsel failed to properly file motion to dismiss charges based on speedy trial and to adequately investigate the charges in preparation for the trial.
>
> Proposition of Law No. 3:
>
> Appellant was denied the effective assistance of counsel guaranteed under Article 1, Section 10 of the Ohio Constitution and the 6th Amendment to the United States Constitution.
>
> Proposition of Law No. 4:
>
> The appellant's convictions are against the manifest weight of the evidence.
>
> Proposition of Law No. 5:
>
> The Eighth District Court of Appeals' standard of review was unduly biased, constituting a reversible error where the panel of review failed to apply a balanced standard of appellate review in contravention of Ohio Rules of Appellate Procedure and appellant's rights to fair adjudication of appeals.

(Capitalization and punctuation altered from the original.)   Andrews raised in his memorandum in support of jurisdiction the same bases for ineffective assistance of trial counsel that he raised in the state appellate court.  On December 1, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On October 27, 2010, Andrews filed in this court a petition for a federal writ of

habeas corpus.  Andrews asserts three grounds for relief in his petition:

> GROUND ONE:  6th Amendment to the United States Constitution.
>
> Supporting Facts:  Defense counsel's performance was objectively below the standard of effective performance where counsel failed to . . . consult with client in preparation for trial; file a timely and proper motion to dismiss charged [sic] based on the expiration of statutory speedy trial time; failed to investigate and obtain relevant available exculpatory evidence; request specific discovery from the prosecutor that is favorable to the defendant; correct improper jury instruction and/or requested jury instruction.
>
> GROUND TWO:  14th Amendment to the United States Constitution.
>
> Supporting facts:  The conviction of the petitioner was based on insufficiency of the evidence, where reasonable doubt existed that petitioner was engaged in drug trafficking, but guilty of drug possession.
>
> GROUND THREE:  14th Amendment to the United States Constitution.
>
> Supporting facts:  The decision of the 8th District Court of Appeals was unreasonable and contrary to the United States Supreme Court, where the standard of review employed by the Ohio state court is inconsistent with the Supreme Court of the United States, resulting in the denial of fundamental fairness.

(Capitalization altered from the original.)  Respondent filed an Answer/Return of Writ on March 13, 2012.  Doc. No. 9.  Andrews has not filed a traverse.  Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Andrews. Andrews filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or

8

more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d).  Cuyahoga County is within this court's geographic jurisdiction.

This court has jurisdiction over Andrews' petition.

B.      *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Andrews' claims involve legal issues that can be independently resolved without additional factual inquiry.

C.      *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*,

9

794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Andrews has no state remedies available for his claims.  Because no state remedies remain available to him, Andrews has exhausted state remedies.

*D.*    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the

10

claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Respondent contends that Andrews has defaulted his first ground for relief in part and his second and third grounds for relief in their entirety.  The court shall examine each of these contentions in turn.

*1.  Default and Andrews' first ground for relief*

Andrews' first ground for relief asserts six bases for a claim of ineffective assistance of trial counsel:  (1) counsel failed to consult with Andrews in preparation for trial; (2) counsel failed to file a timely motion to dismiss based on a violation of Andrews' right to a speedy trial; (3) counsel failed to investigate and obtain relevant exculpatory evidence;[1] (4) counsel failed to request specific discovery from the prosecutor favorable to Andrews; (5) counsel failed to correct an improper jury instruction; and (6) counsel failed to request a proper jury instruction.  Respondent argues that although Andrews raised a claim of ineffective assistance of trial counsel in the state appellate court and in the Ohio Supreme Court, he did not claim in either court that trial counsel was ineffective for failing to consult

---

[1] Respondent apparently interprets this basis for arguing ineffective assistance of counsel as including counsel's failure to subpoena a witness to interpret the Sprint/Nextel cell phone records.  Respondent does not contend such a basis for asserting ineffective assistance of counsel was procedurally defaulted.

11

with Andrews in preparation for trial, request specific discovery favorable to the defendant, correct an improper jury instruction, or request a jury instruction.[2]  Rather, Andrews only argued that counsel had been ineffective for failing timely to assert a motion to dismiss based on a violation of Andrews' right to a speedy trial and for failing to subpoena a witness from Sprint/Nextel to interpret cell phone records.[3]

Respondent is correct that Andrews has defaulted those bases for ineffective assistance of counsel that Andrews did not fairly present to the Ohio courts.  Andrews does not show cause and prejudice for his default of his claims that counsel was ineffective for

_____

[2]  In his petition pursuant to Ohio App. R. 26(A) requesting *en banc* consideration, Andrews stated in passing that counsel failed to present an available defense, request jury instructions on the potential benefit of Logan's testimony, and addressed the alleged withholding of an agreement from Andrews.  Andrews presented no explanation or argument in support of this statement.  The state appellate court dismissed this petition because Andrews sought *en banc* consideration without identifying a conflict in district law that required resolution by the appellate court, contrary to the appellate court's rule.  Thus, the state appellate court dismissed the petition on procedural grounds.  Even if the mere mention of the additional factual bases for ineffective assistance of trial counsel in Andrews' petition for reconsideration could be regarding as "fairly presenting" those bases to the state appellate court, the procedural basis for dismissal of the petition requires this court to conclude that Andrews did not fairly present these bases for ineffective assistance of trial counsel to the state courts.  *See Artuz v. Bennett*, 531 U.S. 4 (2000).

[3]  Respondent also notes that Andrews misstated his claim of ineffective assistance of appellate counsel in the his memorandum in support of jurisdiction filed in the Ohio Supreme Court as follows:

> The trial court's performance fell below a reasonable standard of effective assistance of counsel under the Strickland and Bradley standards, when counsel failed to properly file motion to dismiss charges based on speedy trial and to adequately investigate the charges in preparation for the trial.

(Emphasis added.)  Respondent does not argue, however, that this misstatement defaulted Andrews' claim of ineffective assistance of counsel *en toto*.  Although Andrews misstated the claim in the caption of his argument, his argument made clear that Andrews was arguing that *trial counsel's* performance fell below a reasonable standard.

failing to consult with Andrews in preparation for trial, to request specific discovery favorable to the defendant, to correct an improper jury instruction, or to request a jury instruction; nor does he show that failure to consider those claims will result in a fundamental miscarriage of justice.  Consequently, those bases for his claim of ineffective assistance of counsel should be dismissed.

> *2. Default and Andrews' second ground for relief*

In his second ground for relief, Andrews argues that his conviction was upon insufficient evidence.  Respondent replies that Andrews has defaulted this claim because, in the state courts, Andrews argued only that his conviction was against the manifest weight of the evidence.  According to respondent, Andrews' failure to argue sufficiency rather than manifest weight defaulted Andrews' second ground for relief.

Respondent errs.  The Sixth Circuit has held that a ruling by Ohio courts that a conviction is not against the manifest weight of the evidence implicitly includes a determination that the conviction was upon sufficient evidence.  *Nash v. Eberlin*, 2007 WL 4438008 (6th Cir. Dec. 14, 2007).  This is because a claim that a conviction is against the manifest weight of the evidence applies a higher evidentiary standard than a claim that a conviction was upon insufficient evidence.  Consequently, if a petitioner presents to an Ohio court a claim that his conviction was against the manifest weight of the evidence and the court rejects this claim on the merits, the petitioner has preserved his federal claim of a conviction upon insufficient evidence, and a federal habeas court may consider that claim. *Id.*

In the present case, Andrews properly presented to the state appellate court and the Ohio Supreme Court the claim that his conviction was against the manifest weight of the

13

evidence.  The state appellate court found this claim to be without merit, and the Ohio

Supreme Court denied his application to appeal that claim.  Andrews has, therefore,

preserved his habeas claim that his conviction was upon insufficient evidence.

Respondent's argument to the contrary is not well-taken.

### 3.  Default and Andrews' third ground for relief

Andrews argues in his third ground for relief that the decision of the state appellate

court employed a standard of review inconsistent with the holdings of the United States

Supreme Court.  For this reason, Andrews concludes, the state appellate court denied him

fundamental fairness.  Respondent contends that this ground for relief was defaulted

because in the Ohio Supreme Court Andrews failed to raise this claim in a federal

constitutional context.

In Andrews' memorandum in support of jurisdiction in the Ohio Supreme Court,

Andrews stated the proposition of law corresponding to this ground for relief as follows:

> The Eighth District Court of Appeals' standard of review was unduly biased,
> constituting a reversible error where the panel of review failed to apply a balanced
> standard of appellate review in contravention of Ohio Rules of Appellate Procedure
> and appellant's rights to fair adjudication of appeals.

Nowhere in his argument does Andrews state or imply that the standard for "fair

adjudication of appeals" implicates federal statutory law or caselaw.  The only federal law

that Andrews cites in this section of his argument is caselaw related to ineffective

assistance of counsel.  Consequently, Andrews failed to present this ground for relief to the

Ohio Supreme Court in a federal constitutional context, and it was procedurally defaulted.

Andrews does not demonstrate cause and prejudice for his default or allege that

enforcing the default would result in a fundamental miscarriage of justice.  Accordingly, the

14

default should be enforced and this ground for relief dismissed.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

15

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Andrews' remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.    *Ground one:  Whether Andrews' trial counsel rendered ineffective assistance*

Andrews asserts that trial counsel was ineffective for failing timely to assert a motion to dismiss based on a violation of Andrews' right to a speedy trial and for failing to subpoena a witness from Sprint/Nextel to interpret cell phone records.  Respondent denies that trial counsel was ineffective.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

16

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See Williams*, 529 U.S. 362.  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  The reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court. *Id.*

  1. *Whether trial counsel was ineffective for failing to move timely to dismiss based on an alleged violation of Andrews' right to a speedy trial*

In the present case, the state appellate court reviewed on direct appeal Andrews'

claims that his right to a speedy trial had been violated and that trial counsel had been ineffective for failing timely to raise this claim.  In adjudicating Andrews' claim that his right to a speedy trial had been violated, the state appellate court wrote as follows:

{¶ 42} The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee an accused the right to a speedy and public trial.  *State v. Ginley,* Cuyahoga App. No. 90724, 2009-Ohio-30.  In *Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "the States * * * are free to prescribe a reasonable period consistent with constitutional standards * * *."  To that end, the Ohio General Assembly enacted R.C. 2945.71 in order to comply with the *Barker* decision.  See, also, *State v. Lewis* (1990), 70 Ohio App.3d 624, 591 N.E.2d 854.

{¶ 43} The standard of review that appellate courts apply to speedy trial issues is to count days as set forth in R.C. 2945.71.  *State v. Stevens,* Cuyahoga App. No. 87693, 2006-Ohio-5914.  Trial must be held within 270 days of arrest in order to effectuate a speedy trial.  See R.C. 2945.71(C)(2).  However, pursuant to R.C. 2945.71(E), each day spent in jail "on a pending charge" acts as three days toward speedy trial time, thus 90 days time in jail would equate to 270 days using the triple-count provision.

{¶ 44} In the instant case, the record indicates that Andrews was held in jail until he was brought to trial, therefore the triple count provision of R.C. 2945.71(E) applies and the state had 90 days to bring Andrews to trial.  Andrews was arrested on July 28, 2008.  Applying the speedy trial period from that date, Andrews was required to be brought to trial no later than October 26, 2008, unless that period was tolled.  The record indicates Andrews's trial commenced October 27, 2008, one day past any tolling events.

{¶ 45} The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended by the period of any continuance granted on the accused's own motion and the period of any reasonable continuance granted other than upon the accused's own motion.  See R.C. 2945.72(H).

{¶ 46} The record indicates that the first pretrial was conducted on August 28, 2008, and defense counsel requested a continuance until September 18, 2008 for further discovery.  Pursuant to R.C. 2945.72(E), the speedy trial time is extended for any period of delay necessitated by a motion filed by the defendant.  Requests for discovery are tolling events under this provision.  *State v. Brown,* 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159.

19

{¶ 47} Here, 21 days elapsed between August 29, 2008 and September 18, 2008 and are chargeable to Andrews. Since the trial commenced on October 27, 2008, one day after the state was required to bring him to trial if there were no tolling events, Andrews's right to a speedy trial was not violated. Accordingly, we overrule the first supplemental, pro se, assigned error.

*Andrews*, 2010 WL 2966808 at *6-*7.

The state appellate court further found that because Andrews' right to a speedy trial had not been violated, not moving to dismiss based on an alleged violation of Andrews' speedy trial rights was sound trial strategy. Consequently, the appellate court concluded, trial counsel was not ineffective in this respect. In reaching this conclusion, the state appellate court cited, properly summarized, and applied the *Strickland* standard for adjudicating a claim of ineffective assistance of counsel.

Andrews offers no facts or argument in opposition to the findings of the state appellate court. As the state appellate court's statement of the facts is supported by the record and as its statement of the law is correct, its determination of the facts in light of the evidence was reasonable and its decision was in accord with the holdings of the Supreme Court. Consequently, this court must defer to the state appellate court's finding that Andrews' trial counsel was not ineffective for failing timely to move that Andrews was denied his right to a speedy trial. This ground for habeas relief is without merit.

2. *Whether trial counsel was ineffective for failing to subpoena a witness to interpret the Sprint/Nextel cell phone records*

Andrews also contends that trial counsel was ineffective because, although defense counsel introduced at trial the Sprint/Nextel cell phone records of a prosecution witness, counsel failed to subpoena a representative of that company to interpret those records. Respondent denies that trial counsel was ineffective for failing to subpoena such a witness.

20

In reviewing Andrews' state claim corresponding to this ground for relief, the state appellate court cited and discussed the *Strickland* standard then wrote as follows:

> {¶ 37} "Normally, an attorney's failure to subpoena witnesses [is] within the realm of trial tactics and, absent a showing of prejudice, [is] not deemed a denial of effective assistance of counsel, *State v. Hill,* 2nd Dist. No. 23468, 2010-Ohio-500, quoting *State v. Hunt* (1984), 20 Ohio App.3d 310, 486, 486 N.E.2d 108 N,E.2d 108, and especially in the absence of any showing that the testimony of such a suggested witness would have assisted the defense." *Id.,* citing *State v. Reese* (1982), 8 Ohio App.3d 202, 456 N.E.2d 1253.  See, also, *State v. Maxwell* (Oct. 7, 1993), 2nd Dist. No. 13966.

> {¶ 38} As discussed in the resolution of the previous assigned error, Andrews's convictions were not against the manifest weight of the evidence.  Three detectives overheard Andrews on the speaker phone discussing the package and instructing Logan what steps to take.  The cellular phone Andrews was carrying when he was arrested activated when Detective Ansari used Logan's cellular phone to dial the number of the last call received.

> {¶ 39} In addition, defense counsel cross-examined Logan about the phone records admitted into evidence and cross-examined all three detectives regarding the conversations they overheard between Andrews and Logan.  Without any evidence regarding what testimony the potential witness from Sprint/Nextel might have offered, Andrews has failed to demonstrate that the actual outcome of the trial would have been different.  Other than pure conjecture, Andrews has failed to establish that his counsel's performance was deficient in any way.

> {¶ 40} Moreover, the record indicates that defense counsel issued subpoenas for UPS, DHL, and Federal Express representatives.  Given that defense counsel issued subpoenas for representatives of UPS, DHL, and Federal Express, but not for Sprint/Nextel, is a matter of trial strategy.  There are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel.  *State v. Feliciano,* 9th Dist. No. 09CA009595, 2010-Ohio-2809, citing *State v. Diaz,* 9th Dist. No. 04CA008573, 2005-Ohio-3108, at ¶ 23, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.  Accordingly, we overrule the first assigned error.

*Andrews*, 2010 WL 2966808 at *5-*6.

Andrews, again, offers no facts or argument in opposition to the findings of the state appellate court.  As was the case with Andrews' claim regarding an alleged speedy trial

violation, the state appellate court's statement of the facts is supported by the record,

Transcript of Proceedings ("Tr."), doc. no. 10, pp. 232-75, 277-97, 299-315, 316-70, and

its statement of the law is correct.  Accordingly, the state appellate court's determinations

that trial counsel's performance was not objectively deficient and that Andrews has failed

to demonstrate that he was prejudiced by counsel's alleged error are entitled to this court's

deference.  Thus, this basis for arguing that trial counsel was ineffective is without merit.

For the reasons given above, the remainder of Andrews' first ground for relief,

ineffective assistance of trial counsel, should be dismissed as meritless.

B.    *Ground two:  Whether Andrews was convicted upon insufficient evidence*

Andrews contends in his second ground for relief that he was denied due process

because there was insufficient evidence to support a conviction for drug possession.[4]

Respondent denies this contention.

The Due Process Clause of the Fourteenth Amendment requires that a criminal

conviction be based upon proof beyond a reasonable doubt as to every fact necessary to

constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  A petitioner

who claims that the evidence at trial was insufficient for a conviction must demonstrate that

after viewing the evidence in the light most favorable to the prosecution no rational trier of

---

[4]  Andrews' statement of this ground for relief is confused:  "The conviction of the
petitioner was based on insufficiency of the evidence, where reasonable doubt existed that
petitioner was engaged in drug trafficking and possession of drug [sic] as charged.  The
jury lost its way in finding petitioner not guilty of trafficking, but guilty of drug possession."
Petition at 6 (capitalization altered from the original).  In another part of his petition,
Andrews erroneously states that he was convicted of both drug possession and trafficking.
As the jury found Andrews guilty of drug possession and possession of criminal tools but
not guilty of drug trafficking, the court assumes the Andrews is attempting to assert that
there was insufficient evidence to support his conviction for drug possession.

22

fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

A claim that the evidence was constitutionally insufficient to support a conviction is a mixed question of law and fact.  *Starr v. Mitchell*, 2000 WL 1529807, at *3 (6th Cir. Oct. 6, 2000).  A petitioner may only obtain relief, therefore, by demonstrating that the state court's decision with respect to the facts or the application of a Supreme Court holding was "objectively unreasonable," thus resulting in a decision that involved an unreasonable application of clearly established federal law.  *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).  When a federal court examines a claim of insufficient evidence on habeas

23

review to determine if the state court's decision was objectively unreasonable, it must give deference to both the trial court's verdict with respect to the elements of the claim and the appellate court's consideration of the verdict.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

In reviewing Andrews' corresponding state claim on direct appeal, the state appellate court correctly examined the standards for sufficiency of the evidence versus manifest weight then wrote as follows:

{¶ 26} In the instant case, Andrews was convicted of violating R.C. 2925.11, which states, "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A).  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  Whether a person acted knowingly generally must be determined from all the surrounding facts and circumstances.  See *State v. Huff* (2001), 145 Ohio App.3d 555, 763 N.E.2d 695. Therefore, "the test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria."  *State v. Bettis,* 1st Dist. No. C-060202, 2007-Ohio-1724.  See, also, *State v. McDaniel* (May 1, 1998), 2nd Dist. No. 16221, citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412.

{¶ 27} Possession may be either actual or constructive.  *State v. Kobl* (1997), 122 Ohio App.3d 160, 174, 701 N.E.2d 420.  "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be in his immediate physical possession."  *State v. Upton,* 1st Dist. No. C-050076, 2006-Ohio-1107, quoting *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus.  Circumstantial evidence is sufficient to establish constructive possession.  *State v. Gaiter,* 9th Dist. No. 24758, 2010-Ohio-2205.

{¶ 28} Andrews now argues he was convicted of drug possession based on Logan's inconsistent, questionable, and self-serving testimony.  We disagree.

{¶ 29} In addition to Logan's testimony that the delivered package was intended for Andrews and that she only agreed to receive it because she was having financial difficulties, three police detectives testified about the post-delivery conversations between Logan and Andrews.  Detectives Lake, Santiago, and Ansari all testified about the cellular phone conversation that ensued when Logan chirped Andrews. The detectives testified that the conversation was conducted on the speaker phone,

and they heard Andrews instructing Logan to check for suspicious activity, to pick him up at his nephew's house, and to leave the package at her house.

{¶ 30} Based on Andrews's instruction to Logan, the detectives traveled with Logan to the appointed location.  Detective Santiago, who traveled in Logan's vehicle, testified that Andrews chirped Logan and instructed her to pick him up at a corner store located at Eddy and Arlington Roads.  Detective Santiago overheard the entire conversation because it was conducted on the speaker phone.

{¶ 31} Further, Detective Ansari recovered a cellular phone from Logan's vehicle on the passenger seat where Andrews had been sitting when he entered the vehicle.  Detective Ansari used Logan's cellular phone to dial the number of the last call received and the cellular phone he recovered rang.  Detective Ansari dialed the number to confirm that the chirps were received from the phone Andrews was carrying.

{¶ 32} Both Logan's and Andrews's cellular phones revealed that the last chirp was sent and received at 1:55 p.m. on July 28, 2008.  Phone records introduced at trial detailed the various calls that were sent and received between Andrews and Logan.

{¶ 33} Based upon the review required of this court, and considering the entire record, including the testimony of the three detectives who overheard the telephone conversations between Andrews and Logan specifically discussing the delivered package, the jury did not "clearly los[e] its way" and "create [ ] such a manifest miscarriage of justice" that Andrews's convictions must be reversed.  Accordingly, we overrule the second assigned error.

*Andrews*, 2010 WL 2966808 at *4-*5.

Once again, Andrews offers no facts or argument in opposition to the state appellate court's conclusions of law and findings of fact.  The state appellate court's statement of the facts is consistent with the testimony offered at trial.  *See* Tr. at 219-31, 232-75, 277-97, 299-315, 316-70.  Andrews does not cite any Supreme Court holding that the state appellate court unreasonably applied in reaching its decision, nor does this court know of any such decision.  Finally, the appellate court's conclusion that Andrews' conviction was not against the manifest weight of the evidence was entirely reasonable, given the facts and law recited by the court.

25

The state appellate court's determination that Andrews' conviction for drug possession was not against the manifest weight of the evidence necessarily includes the finding that there was sufficient evidence to support Andrews' conviction.  This court must defer to the state appellate court's finding regarding the sufficiency of the evidence against Andrews.  Accordingly, Andrews' second ground for relief, alleging a conviction upon insufficient evidence, should be dismissed as without merit.

IV.

For the reasons given above, Andrews' first ground for relief, insofar as it alleges ineffective assistance of trial counsel for failing to consult with Andrews in preparation for trial, request specific discovery favorable to the defendant, correct an improper jury instruction, or request a jury instruction, and the entirety of Andrews' third ground for relief should be dismissed as procedurally defaulted.  Andrews' first ground for relief, insofar as it alleges ineffective assistance of trial counsel for failing timely to assert a motion to dismiss based on a violation of Andrews' right to a speedy trial and for failing to subpoena a witness from Sprint/Nextel to interpret cell phone records, and the entirety of Andrews' second ground for relief should be dismissed as without merit.  Thus, Andrews' petition should be dismissed with prejudice.

Date:  September 13, 2012            _/s/ Nancy A. Vecchiarelli_
                                     United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the**

26

specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.